February 21st, 1816.
Judge Roane
pronounced the court’s opinion as follows:—
The court is of opinion that the deed of settlement in the proceedings mentioned, having been made in contemplation of a marriage between a feme sole and her intended husband, a man very much indebted, and whose creditors, but for such a settlement, might, after the marriage, have swept away the property of the wife to pay the pre-existing debts of the husband, and left her in absolute indigence, — is founded upon a sufficient consideration, and ought not to be avoided in favour of the appellees, creditors of the husband anterior to the marriage. — The court is also of opinion, that, upon t.he true construction of that deed, which declares that William Scott and Mart Davis, two of the parties thereto, should enjoy the interest and profits of the property settled, jointly during their *91 livesthat the settlement was made with the consent of Wit-Ham Scott the intended husband; — that the trustee therein named do permit the said William and Mary during their joint lives to take and enjoy the said interest and profits, for their own use and benefit; — the idea of a property in the said William in and to the settled subject, during the coverture, is clearly re-probated. A contrary construction would not only defeat the avowed object of the settlement, by sweeping away the property as aforesaid, but is in utter hostility with that part of the deed aforesaid, which vests the property in the said William in the event of his surviving his wife; — in which case the trustee is directed to transfer, assign and pay over the property settled, to William; terms which, by contrast clearly import the contrary idea, in relation to the same, during the coverture.
As it is conceded in this cause, that the deed in the proceedings mentioned was executed prior to the marriage of the parties, and the same having been recorded, on the acknowledgment of the husband and his wife, within the legal term, — ' (without deciding what effect that acknowledgment and recording may have as to the wife or her creditors,) the court is further of opinion that the said execution and acknowledgment is conclusive as to the appellees the former creditors of the appellant William, there having been no instant of time during which the settled property was liable to satisfy their claims, and the same not having been contracted in contemplation thereof.
On these grounds, the court is of opinion to reverse the decree, and perpetuate the injunction ; — but without prejudice to any proceedings which the appellees may, at any time, be advised to institute for the purpose of charging the contingent interest of the appellant William arising under the deed aforesaid.
Decree reversed.
Judge Coalter delivered the following separate opinion. This appears to me to present a proper case for the interposition of a court of equity, not only from the nature of a portion of the property, (viz. slaves,) which was about to be sold, and on which ground this court has, in several cases, determined that such interposition was proper, but on the ground of difficul *92 ty as to the extent of the debtor’s interest, and how such interest can be reached by the creditor.
The object of the deed of trust, referred to in the bill, was either to preserve the use of this property to the husband and wife, during coverture, for their joint maintainance, and the profits, as they arose, to be applied in that way, clear and free from the creditors of, or purchasers from, the husband, or, what would be nearly the same thing, to the separate and exclusive use of the wife during the coverture, and consequently clear of his creditors, or purchasers under him, with remainder to the survivor; or the object was to secure it to husbaud and wife, in the usual way, during coverture, and then to the survivor; in which case the great object of the deed would be to secure the remainder to the survivor, leaving the husband the control during coverture. But, even in this latter case, the interest of the debtor, in that portion of the property which was to return to the estate of the first husband, would be different from that which had been acquired, and was held, by the wife in her own right: — as to the first, his interest would be for his own life, provided his wife should so long live, and, as to the latter, his interest would be during life, with remainder over in case he survived his wife : — or the deed may' possibly admit of the construction that he, as j’oint tenant with her, was to fake one half of the profits during life, if his wife so long lived, with remainder over in the property held in her own right, if he survived her.
If either of the first constructions should prevail, as the property would, by the deed itself, be free from the husband’s creditors, then, on the principles of Mrs. Copland’s case, the injunction ought to have been made perpetual; unless, indeed, the want of the proof stated in the decree was a proper ground for dismissing the bill. As to that ground, I consider the answer as impliedly admitting that the contract was entered into before marriage; because, in the answer to the bill, which alleges that fact, and refers to the deed, which bears date before the marriage, the parties defend themselves on one ground only, to wit, its not being duly recorded. At all events, such a waiver of that point of defence ought not to be permitted to entrap the party on the final hearing, but the court, if farther proof of that fact was considered material, ought to have insti *93 tuted an inquiry on that point, especially as the bill was sworn to, which would be equal to the affidavit of the party that such was the fact, and against which a hasty presumption of fraud ought not to have been entertained, when the answer does not even call tor farther proof.
The recording of the deed was good as to the husband and those claiming under him, on his acknowledgment; and probably it was good, also, as to the wife, without privy examination; (hut as to this i give no positive opinion;) for, though she is a grantor therein, it was a deed for her benefit, being intended to protect her estate from the marital rights of the intended husband, and in fact she took an estate thereby:— the deed would have been valid if the intended marriage had not taken place; but, on that event, it intercepted the husband’s marital rights, and in fact operated as a deed from him for her benefit, in the same manner as if he had articled to convey and settle this property in this way, after marriage, and had made such settlement. But, again, when it was executed, she was free from that control which the law means to guard against, and if she had been privily examined, the inquiry would be, did she execute it freely ? And was she still willing to be bound thereby ? But, as the case declares her free at the time the deed was executed, why make the first inquiry ? And. as she passed nothing when the acknowledgment was made, but was then confirming an estate in herself, why make the second?
If, however, neither of the two first mentioned constructions of the deed should prevail, and the result should be that the husband has, under one or the other of the latter constructions, an interest in this property, from which his creditors ought not to be excluded, I think the difficulty, as to the amount of that interest, and how the creditors are to obtain it, is such, that justice to either party was not likely io ensue from a sheriff’s sale. These difficulties, to say nothing of the question whether the possession did or.did not follow the use in this case, were well calculated to embarrass purchasers, and to occasion a great sacrifice in the sale. In this point of view, I think the preventive justice of a court of equity was properly applied to.
I am by no means satisfied that either of the two first mentioned constructions can he put on this deed: — I can find *94 no case where the husband, or his creditors are excluded, except by express words of exclusion, or words from which that intention can fairly be drawn: — in this case, I can find no words which will justify me in drawing this inference ; — on the contrary, this deed is drawn, I believe, in the usual way, where the great object is to secure the property, in remainder, either to the survivor, or to the issue of the marriage, leaving the marital rights of the husband, during coverture, untouched-There is no statement in the deed that the intended husband was in debt, and that the object was to secure the property against his creditors, or to provide a comfortable maintainance for the wife, who, in this respect, seems willing to share the fate of her intended husband during their joint lives, and is only desirous of securing her property to herself in case she should survive. Had it even been for her livelihood,(a) this might perhaps have done. But if there is no foundation for a contrary construction, the case must be left to the operation of the law by which a married woman, unless there be some agreement to the contrary, gains no property in personal goods separate from the husband, as being against the rules of iaw and common right, in consequence of the unity of person which exists between them.(b) Nor is this a case of articles, which the court might construe liberally.(c) perhaps even as it resaected the rights of creditors, but is a deed of settlement, which must be construed, as all other instruments of that kind' according to the plain meaning of the parties as supposed to be fully expressed therein; only resorting to extraneous matter in case of doubt and ambiguity. A woman about to marry, if she knows her intended husband is in debt, or if she doubts his prudent management, may guard her property against his marital rights during coverture, but the deed must manifest this intention: — every marriage contract has not this operation, which I fear will be the result of a construction that this has.
If then the husband took an estate in this property, either in whole or part, or a right to receive the whole or part of the profits, as they should arise during his life, which interest he could control, and could apply to the payment of his debts, or otherwise, and which his wife or trustee could not prevent, it would seem to me to follow that his creditors, whether prior or subsequent, ought to have the benefit of such his property ; *95 and had they filed a bill to have this interest ascertained, and either sold, or the profits applied to discharge his debts, I think they ought to have been relieved in some way or other; and farther that, if his contingent remainder, in the proper goods of the wife, was too remote an interest to be sold, that a lien should be preserved to them thereon, with liberty to resort to the court for a sale thereof, in case he should survive his wife; so as to prevent any alienation thereof in the mean time. But can any decree be pronounced in this case, giving such remedy to the defendants in the cause, against the plaintiffs, as they would have been entitled to as plaintiffs? Or can we do more than perpetuate the injunction as to the proceedings on the execution, without prejudice to any suit that the appellees may be advised to bring ?
I incline to think this latter is all that can be done.

 3 Atk. 399.

 2 Eq. cases abr. 149-151.

 1 Fonb. 203.