Green, J.
The transactions impeached in this case, are so palpably fraudulent, that it would be a waste of time to discuss the proofs in detail. The decree subjecting the property in question to the satisfaction of the plaintiffs’ judgments, is, therefore, right in principle, but it is erroneous in its details in several particulars. (Here the judge pointed out several errors in the details of the decree, and indicated the proper corrections thereof: they involved no principle.)
The decree directs, that Richard Williams shall participate equally with James Williams, in the distribution of the funds held liable to their demands, whether they be sufficient to pay them in full or not; whereas the latter having obtained the first judgment and placed the first execution in the sheriff’s hands, is entitled to priority, both in respect to the real and personal property, the judgment binding the former, and the execution delivered, the latter, in equity, it is a settled rule in respect to the satisfaction of judgments, and other liens upon an equitable fund, where neither has the legal title, that all are to be paid according to their priority in point of time, upon the maxim, in equali jure, qui prior est in tempore, potior est in jure. Symmes v. *143 Symonds, 4 Bro. P. C. 328. (Tomlin’s edi.) Brace v. The Dutchess of Marlborough, 2 P. Wins. 495. And in this case tlio fund is equitable, so far as the judgment creditors are concerned, the legal title being in the trustees for the security of the debt due to F. James & Co. which has a priority over the judgments.
This leads us to a more particular examination of the questions, suggested in the argument, as to the extent to which the plaintiffs’ judgments, and the proceedings under them, operated as an equitable lien upon the trust property. As to which, it was insisted, on the part of the appellants, that only three-fourths of the land was bound, a moiety by the first judgment and a moiety only of the remaining moiety by the second. This question might be very properly raised, if the subject upon which the judgments operated, was lands, of which the debtor was seised, and which might be extended at law. And, even in that case, I should strongly incline to the opinion, that two judgments at different times, would, under all circumstances, and no matter when elegits were taken upon them and executed, bind the whole of the debt- or’s land, each a full moiety. The words of the writ command, that a moiety of the lands of which the defendant was seised at the time of the judgment, or at any time after, shall be delivered to the plaintiff, if, therefore, an elegit upon the second be executed before one upon the first judgment, a moiety would be taken: for, the debtor in that case, would continue seised of the whole, and no injury would be done to the creditor who had the prior judgment, as a moiety would be left to satisfy his elegit; and as to the effect of two elegits under those circumstances, there does not appear ever to have been any doubt. So, if an elegii were executed on the prior judgment, and afterwards an elegit taken upon the latter, it seems to me that the remaining moiety might be taken; for, notwithstanding the extent under the first elegit, the debtor continues seised of the land extended, since the tenant by elegit has no freehold, but only a chattel interest which goes to his executor, and is extendible only *144 as a chattel. 2 Inst. 396. 10 Vin. Abr. 543. Execution. M. pl. 1. and the notes there. 11 Id. 173, 5. Executors. Z. 2. pl. 6. 23. 30. 34. Accordingly, it was held, that the whole of the land might be taken by two successive elegits, under these circumstances; 10 Ed. 2. Execution. cited at the end of the case of Huit v. Cogan, Cro. Eliz. 483. In this last case, however, the court held, that the second elegit should only take a moiety of the remaining moiety, but advised the sheriff to return the special matter: the point, therefore, does not appear to have been adjudged. Again, in the case of The Attorney General v. Andrew, Hardr. 23-27. in which it was held, that upon two contemporary judgments, the whole might be taken, a moiety under each, it was said in argument, that upon a second elegit only a moiety of the remaining moiety could be taken; for which was cited Huit v. Cogan, before noticed, and Burnham v. Bayne, 2 Brownl. 96. in which that point was agreed by all the judges. And in Pullen v. Burbeck, 12 Mod. 357. Holt, C. J. said, that although, in such a case, only a moiety of the remaining moiety ought to be taken, yet if the whole of the remaining moiety be in fact taken, this is well, and no audita querela would lie. Although, then, there is no adjudged case, contradicting that of the 10 Ed. 2. yet these repeated and imposing dicta would induce me to pause, if it were necessary to decide that point in this cause, though upon the whole, I should probably follow the ancient decision, as conforming to the literal effect of the writ, and the true spirit of tire law.
It is, however, unnecessary to decide that point here, since if the lien of a judgment upon an equitable subject, was in all respects analogous to its lien upon lands of which the debtor had a legal seisin, upon the principle that equity follows the law; yet no elegit being in fact executed or capable of being executed, a court of equity upon the familiar principle of marshaling securities, according to which, when several have liens upon the same subject, they will be so arranged in equity, that he who has the prior security, shall use it in such a way as not to affect the interests of the *145 others, if’ that ca.n be done without injury to himself, would postpone the effect of James Williams’s elder to that of Richard Williams’s junior judgment, so as to make the case analogous to that at law, where an elegit upon a posterior judgment is executed before one is taken out on a prior judgment, in which case each would take a full moiety. (See the cases referred to in 1 Mad. Chan. 202. upon the subject of marshaling securities). The rights, however, of judgment creditors, in respect to an equitable fund, are not analogous to their rights at law, but stand, particularly in respect to property in mortgage, upon an intirely different foundation. A judgment creditor acquires an equitable lien upon the equity of redemption in the debtor’s property subject to mortgage. And a court of equity, upon the principle that equity follows the law, would, if it were practicable, only give the same effect to the equitable lien, as would be given to it at law, if the subject of the lien was a. legal title; that is, would only subject a moiety. But that is impracticable ; since the only means by which a court of equity can enable the creditor to reach the equity of redemption, is to allow him to redeem; which cannot be done, with a proper regard to the rights of the mortgagee, without requiring him to redeem in toio, and not for a moiety only. The consequence of which is, that, acquiring by that means the legal title to the whole, the creditor cannot be redeemed by the debtor, without paying not only the whole of the mortgage debt, but also the whole of the judgment, upon another principle of equity, that he that asks equity must do it. An example of this is to he found in the case of Stileman v. Ashdown, as reported in Ambler, p. 13. See also Bacon v. Ashby, Finch. Rep. 366. Morret v. Westerne, 2 Vern. 663. To the purposes of this case, the deed of trust has the same effect as a mortgage.
In strictness, R. Williams’s judgment, upon which no execution had been put into the sheriff’s hands, at the time of the filing of the bill, was no lien in equity, upon that portion of the trust property which v/as persona], nor could he right *146 fully resort to a court of equity as to that subject. Shirley v. Watts, 3 Atk. 200. Yet he was right in court, as to the lien of his judgment on the equity of redemption in the land, as was James Williams, in respect both to the real and personal subject. And R. Williams having placed an execution in the hands of the sheriff, pending the suit, which has been returned nulla bona, he might reach the personal fund, by filing a supplemental bill, if that were necessary. But it is not: he, like any other creditor who had acquired a lien upon the personal property in question, by judgment and execution delivered to the sheriff, may exhibit his claim before a commissioner without a bill, and have satisfaction out of the fund, according to his rights in respect to priority. Burroughs v. Elton, 11 Ves. 29.
The result is, that the defendants Joseph, Philip and William Haley are entitled, first, to satisfaction out of the trust fund, for the balance of the debt due originally to F. James Co. secured by the deed of trust, and transferred to them, after deducting whatever they may he found to have received, from the hires of the slaves and the rents and profits of the mill and lands, or from the disposition of any of the slaves, and the value of the personal property which they acquired under colour of the sale of September 29. 1823; and James Williams next, and then Richard Williams, are entitled to satisfaction of their judgments, or of so much of Richard Williams’s as may he due, out of the residue. And any surplus should be paid over to such of the defendants, as may shew that he or they are best entitled to it.
Carr, J.
With respect to the remarks of my brother Green, on the subject of the elegit, viz. that if the elegit of A. be levied on the half of B’s land to-day, and to-morrow C. get a judgment against B., C. by his elegit can take the other half of the debtor’s land; I do not mean to say that I am against it: my impression has been otherwise; but I have not examined the subject, nor does it arise in this case. I mean merely to say, that I have no opinion with respect to it.
*147 Cabell, J.
I wish it to be understood, that I give no opinion on the question, how far two elegds may, under all circumstances, be made to reach the whole land” of the debtor. That question is not necessary to he decided in this case.
The whole court concurred in a decree approving-the principles of the chancellor’s decree, but correcting several of its details, and conforming with the results stated in the opinion of judge Green.