1840.

White
v.
Knapp.

---

WHITE *vs*. KNAPP and others.

Where a mortgagee applied to a third person for an advance of money to enable him to take up his mortgage, promising to give him the same security for such money as the mortgagee then held, and upon receiving the money paid it to the mortgagee and took an assignment of the mortgage from him to such third person ; *Held*, that the mortgage was not discharged, and that the assignee was entitled to hold the same as a security for the money thus advanced.

Where upon an exchange of farms each party gives to the other a bond to pay off and indemnify him against prior incumbrances upon the lands conveyed to him, and the lands conveyed to one of them are afterwards sold to satisfy prior incumbrances thereon, whether the grantee whose land is thus sold has an equitable lien upon the farm given by him in exchange therefor, to the extent of such prior incumbrances ; *Quære?*

THE object of the complainant's bill in this case was to foreclose a mortgage given to him by Daniel Knapp, one of the defendants ; and the only question arising upon the pleadings and proofs was, whether the defendant, W. M. Thomas, was entitled to hold a previous mortgage upon the same premises as a prior security for $380 and interest, from the 17th June, 1836. The mortgaged premises for-

March 3.

1840.

White
v.
Knapp.

merly belonged to the Bank of Chenango, and were sold to S. W. Hinkley, in 1834, who gave to the bank a bond and mortgage on the premises, for $1400, to secure the purchase money. In March, 1836, Hinkley and the defendant Knapp exchanged farms, when Hinkley gave to Knapp a bond to indemnify him against the balance then due on the mortgage to the bank, and a certain other mortgage to the trustees of common schools in Bainbridge. Knapp also gave a bond to indemnify Hinkley against incumbrances, to the amount of seventeen or eighteen hundred dollars, upon the farm conveyed to Hinkley in exchange for his ; and Knapp neglected to pay up those incumbrances, and had become insolvent, whereby Hinkley lost the farm which he received in exchange for his own. In September, 1836, Knapp being indebted to the complainant in the sum of $1413,27, gave to him a bond and mortgage for that amount upon the farm which had been received from Hinkley in exchange, to secure the payment of that debt, in whiskey, at the times therein specified. In June, 1836, Hinkley being called upon by the bank to pay up the balance due upon his mortgage, and not having sufficient money for that purpose, he induced the son of the defendant Thomas, to let him have $380 of his father's money to enable him to take up the bond and mortgage to the bank, promising him, that his father should have the same security for the money thus advanced that the bank then held, which arrangement of the son the father sanctioned, when informed of it. Hinkley thereupon went to the bank and paid up the balance then due, with the money thus obtained, together with a further sum of his own, and took from the bank an assignment of the bond and mortgage to the defendant Thomas, and afterwards delivered such bond and mortgage to him as his security.

*James Clapp*, for complainant.

*D. S. Dickinson*, for defendant Thomas.

*H. R. Mygatt*, for defendant Knapp.

THE CHANCELLOR. Upon the state of facts presented in this case, I should have no doubt that the defendant Thomas was entitled to hold the bond and mortgage as security for the money thus advanced by his son, with the interest thereon, even if the subsequent mortgage by Knapp to the complainant had been given for money advanced at the time, and not merely to secure an antecedent debt. The fact that $380, of the money of Thomas, was advanced to take up the mortgage upon the faith of the promise that he should have the benefit of the security then held by the bank, is proved by a credible witness, independent of the testimony of Hinkley. And there can be no doubt of the intention to preserve the existence of that security, from the fact that the mortgage was assigned to Thomas by the proper officer of the bank, at the time the money was paid. As the payment of the money and the assignment of the mortgage were all one transaction, it is wholly immaterial whether the money was paid before or after the assignment was drawn and executed. Neither is it of any consequence whether Hinkley did or did not state to the cashier the true reason why he wished the mortgage transferred to Thomas. There is no pretence in this case that the complainant has been misled or induced to part with any thing valuable, upon the supposition that the mortgage to the bank had been discharged. If he had made any inquiry of the officers of the bank, they would of course have told him of the assignment, if they had told him the truth. I have examined the bill, and cannot even find an allegation that the complainant had been misled by any statements which Hinkley had made. On the contrary, I am inclined to think he has gotten a security upon this farm for the payment of his debt from Knapp, which ought not in equity to have a preference over Hinkley's equitable lien upon the farm to satisfy the balance of the incumbrances still existing upon the farm which was received in exchange. Without expressing any opinion, however, on that question, which cannot arise on these pleadings, or between these parties, I am satisfied the defendant Thomas is entitled, un-

der the assignment of the bank mortgage, to a preference in payment out of the proceeds of the mortgaged premises, for the $380 and interest from the 17th of June, 1836. The decree must therefore direct that amount, together with his costs, to be first paid.

As the whole amount of the complainant's mortgage is not yet due, and he and the defendant Knapp do not agree as to the amount which has been paid thereon, the one stating it at $60 and the other at $80, no decree can be made until the amount is computed by a master, and a report has been made as to whether the premises can be sold in parcels. A reference is to be directed accordingly; with liberty to either party to proceed upon it before the master, with liberty to either to apply for a decree of sale upon the coming in of the report on any regular motion day or in term.